## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: BARD IMPLANTED PORT CATHETER PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | MDL DOCKET NO. 3081 |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO TRANSFER ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

### I.  INTRODUCTION

Plaintiffs Jean Cunningham, Mary Nelk, Dana Beltz, Lori Prentice, Shannon Elwell, Vincent Anderson, Patrice Terry, and Debbie Groves (collectively "Movants") respectfully submit this Reply Memorandum in Support of their Motion to Transfer pursuant to 28 U.S.C § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. As set forth more fully in this Reply, and notwithstanding the arguments enumerated in Defendants Response in Opposition (Dkt. No. 20), transfer and centralization is warranted in this matter due to (1) the commonalities of complex factual issues that pervade all of the cases subject the Motion to Transfer, (2) the number of current and future cases, and (3) the implausibility of informal coordination.  In further support of the Motion to Transfer, Movants show unto this Honorable Panel as follows.

### II.  RELEVANT FACTUAL BACKGROUND

In or around December 2022, the undersigned counsel made contact with counsel for the Defendants in the instant matter with the purpose of exploring informal coordination regarding a large and growing number of potential legal claims of individuals who have allegedly suffered injuries arising from failure of one of the Defendants implanted port

products. In the interest of transparency and good faith, the undersigned provided to counsel a spreadsheet containing information pertaining to 656 individuals that had retained one of a group of law firms investigating implanted port injury cases. Among the purposes of providing this information were to (1) demonstrate the large numbers of cases that may ultimately be filed in the event that informal pre-suit coordination were not conducted and (2) attempt to conserve the resources of the parties and avoid burdening numerous courts throughout the country with a large number of similar cases. Rather than engaging in further discussions regarding, *inter alia*, executing a tolling agreement and exchanging case information informally, Defendant effectively invited the instant litigation by refusing to entertain continued discussions on those issues.

Following the filing of several of the cases that are the subject of Movants' Motion to Transfer, the undersigned again contacted counsel for the Defendants for the purpose of facilitating informal coordination, seeking transfer pursuant to 28 U.S.C § 1404 of *Nelk v. Becton, Dickinson and Company, et al.* (D. NJ. 2:23-cv-01173) to the Western District of Missouri, where the plaintiff in that action resides and where the majority of similar cases are pending. Defendants refused to consent to such a transfer, choosing instead for the case to proceed at that time as the only case in the District of New Jersey.

Following the filing of the Movants' Motion to Transfer, the undersigned attempted again to facilitate some measure of coordination and efficiency among the pending cases that are subject to the Motion by seeking assent from Defendants to stay proceedings in the cases pending a decision by this Panel on Movants' Motion to Transfer. Defendants declined this

proposal and proposed instead to proceed with motion practice and discovery in each of the subject cases. (see Dkt. No. 20-5)

### III. ARGUMENT

    a. The Common Factual Issues are Sufficiently Complex to Merit Centralization

Defendants argue that the individual or case-specific issues among the subject cases predominate over common ones and obviate the need for centralization, citing the fact that plaintiffs allege three categories of injuries, respectively, arising from multiple different models of the Defendants' line of implanted port products. (Dkt. No. 20 at 12). However, the commonality of the complex questions of fact present in the instant matter are of a nature which the Panel has historically found merit centralization.

Centralization pursuant to Section 1407 "does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008).

> Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non–common issues to proceed concurrently with discovery on common issues; and (2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

*In re: Gadolinium Contrast Dyes Products Liab. Litig.*, 536 F. Supp. 2d 1380, 1382 (J.P.M.L. 2008)(internal citations omitted). Even where there is some diversity among plaintiffs as to the nature of the injuries alleged, centralization is especially appropriate where there is a common injury mechanism. *In re Atrium Med. Corp. C-Qur Mesh Prod.*

*Liab. Litig.*, 223 F. Supp. 3d 1355 (J.P.M.L. 2016)(transferring cases involving alleged failures of different models of manufacturer's hernia mesh products causing different injuries such as infection, chronic pain, hernia recurrence). The Panel in *Atrium* correctly observed the common alleged cause of the diverse injuries, namely the different models' propensity "incite an allergic or inflammatory response that causes severe complications." *Id.*; *Cf. In re Belviq (Lorcaserin HCl) Products Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021)(declining to centralize cases involving a " broad range of cancers without indicating the mechanism by which" those cancers were allegedly caused). Notably, a broad variety of injury modes were at issue in *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 316 F. Supp. 3d 1380 (J.P.M.L. 2018). In that case, C.R. Bard – one of the defendants in the instant matter – did not oppose centralization even though the injuries complained of in the different actions, respectively, included "adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections." *Id.* At 1380-1381.

In the face of this clear preference for centralization of cases such as those at issue here, Defendants rely on *In re Linear Gadolinium-Based Contrast Agents Products Liab. Litig.*, 341 F. Supp. 3d 1381 (J.P.M.L. 2018). This case is patently distinguishable with regard to the issue of diversity of injuries. In that case, the Panel was faced with actions against numerous different manufacturers of gadolinium-based contrast agents involving what one defendant described as "a random constellation of symptoms for injuries" with no common diagnosable disease. (see MDL No. 2868, Dkt. No. 46).

The cases before the Panel involve a much narrower set of injuries than those considered in *In Re Davol* and *In Re Linear Gadolinium* in that there are only three different injury modes, all of which arise from a common mechanism, the catheter surface degradation caused by loss of barium sulfate particles. As a result, there will be remarkable overlap among the cases in the discovery materials sought, the types of experts retained and the evidence they provide, and numerous other issues.

Nor does the fact that the cases at issue involve different models of the Defendants' line of implanted port products militate against centralization. In *In Re Davol*, the Panel considered actions involving numerous different models of hernia mesh with vastly different designs, different constituent materials, different indications for use, and different anatomical implant sites.[1] Nonetheless, the Panel found that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *Id. See also In re Exactech Polyethylene Orthopedic Prod. Liab. Litig.,* MDL No. 3044, 2022 WL 5408779 (J.P.M.L.. Oct. 7, 2022)(centralizing cases involving polyethylene liners of numerous models of hip, knee, and ankle implants).

The commonalities among the products at issue and the injuries they cause are greater in this case, and the differences fewer, than many other litigations that have been deemed to warrant centralization. In light of this, centralization will promote efficient adjudication of these cases and conservation of judicial resources as well as those of the parties, and the Panel should grant Movants' Motion to Transfer.

---

[1] The various products at issue included designs intended to treat ventral hernias and inguinal hernias, designs with and without bio-resorbable polymers, and designs with flat and three-dimensional construction. Moreover, Bard sought to include cases involving the Composix Kugel Hernia Patch -- an additional different product line with distinct materials and design – in the cases to be centralized.

b. <u>Informal Coordination is not Feasible</u>

Contrary to the assertions in Defendants' Response in Opposition, informal coordination in these cases is not feasible for two important reasons. First and foremost is the fact that informal coordination has been repeatedly sought by Plaintiffs and repeatedly rebuffed by Defendants. There are multiple available mechanisms to facilitate informal coordination short of centralization, the preferred ones being Section 1404 transfer, coordinated dismissal or nonsuit, and joint motions for stay. *In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378 (J.P.M.L. 2012). Plaintiffs have requested Defendants' cooperation in employing each of these mechanisms, each instance met with Defendants' refusal. These efforts began with the earnest, albeit mischaracterized, pre-suit discussions referenced in Defendants' Response. Well in advance of those discussions, numerous individuals had already contacted and retained the law firm of the undersigned, as well as a number of other law firms, to investigate and prosecute potential claims related to injuries from implanted port products. The vast majority of those potential claims implicate devices manufactured by Defendant.[2] Despite the volume of potential claims represented to Defendants and the factual similarity of same to the cases previously litigated and resolved, Defendants disengaged from those discussions, the goal of which was to prevent numerous federal courts from being burdened with large-scale duplicative litigation.

Following the filing of several of the cases that are the subject of Movants' Motion to Transfer, the undersigned again contacted counsel for the Defendants for the purpose of facilitating informal coordination, seeking transfer pursuant to 28 U.S.C § 1404 of *Nelk v.*

---

[2] That proportion only increases as potential claimants' medical records are obtained and reviewed.

*Becton, Dickinson and Company, et al.* (D. NJ. 2:23-cv-01173) to the Western District of Missouri, where the plaintiff in that action resides and where the majority of similar cases are pending. Defendants refused to consent to the requested transfer despite the obvious efficiencies to be gained by transferring the case to the District in which the plaintiff resides.

Lastly, the undersigned attempted again to facilitate coordination and efficiency among the pending cases by seeking assent from Defendants to stay proceedings in the cases pending a decision by this Panel on Movants' Motion to Transfer. Defendants declined this proposal and proposed instead to proceed with motion practice and discovery in each of the subject cases in all of the different Districts and before numerous different judges.

Additionally, informal coordination is not feasible due to the number of related cases that will continue to be filed. At present, the law firm of the undersigned is currently investigating a large number of similar cases, many of which will eventually be filed across several jurisdictions. Moreover, the number of law firms investigating and filing similar cases has only increased and will continue to do so in the foreseeable future.

Contrary to Defendants' claims regarding the circumstances of the proliferation of these cases, there are precipitating factors which have created the environment in which the volume of cases will continue to grow. Prominent among them is a large-scale study published in 2021 which shed light on the risks associated with products such as those at issue in this litigation.[3] The Khalid study examined a population of 93,756 Medicare-eligible patients who had been implanted with a port catheter device and included a 5-year follow-up period. Owing to the dominant market share which Defendants have in the vascular access market, the majority of

---

[3] Khalid SI, Maasarani S, Shanker RM, Wiegmann AL, Wu R, Skertich NJ, Terranella SL, DeCesare L, Chan EY. Outcomes following port-a-catheter placement in the Medicare population. Surg Open Sci. 2020 Nov 11

the patients in that study were likely implanted with one of Defendants' port products. With a staggering complication rate of 59.04%, the study concluded that:

> these data support the notion that implanted port-a-catheters are not benign and represent an unnatural physiologic state leading to the progressive development of several complications.

Khalid et al. Nor is Defendants' argument regarding the products' time on the market availing, as numerous MDLs have been granted following the discovery of a correlation between a harm and a long-marketed product. *See In re: Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d 1346 (J.P.M.L. 2016)(centralization granted for pesticide registered for use in 1974); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356 (J.P.M.L. 2016)(centralizing cases involving talcum powder introduced in 1894); *In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, No. MDL 3043, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022)(centralizing cases involving medication marketed in the United States since 1950).

With an estimated 300,000 implanted port products implanted in the United States every year, the high complication rate coupled with the Defendants' overwhelming market share will lead to very large numbers of filings into the foreseeable future, making informal coordination impracticable.

    c. <u>The Western District of Missouri is the Most Appropriate Transfer Jurisdiction</u>

As set forth in Movants' initial Motion to Transfer, the Western District of Missouri is an appropriate transferee District by virtue of the fact that multiple cases are already pending there and it would be convenient for parties and counsel in a litigation of nationwide scope. Dkt. No 1-1 at 13-14. *See also In re: Syngenta AG MIR162 Corn Litigation,* 65

F.Supp.3d 1401 (J.P.M.L. 2014)(transferring to the District of Kansas, a "readily accessible" District where one action and multiple tag-alongs were pending).

The District of Utah is not an appropriate transfer jurisdiction due to its lack of pending cases and attenuated connection to the case. Contrary to Defendants' assertions, the implanted port products at issue in this matter are actually manufactured in Mexico by Bard Reynosa S.A. DE C.V. The Defendants represented as much to the United States Food and Drug Administration in its Device Establishment Registration disclosures.[4] Thus, evidence regarding the actual manufacture and assembly of the products at issue would reside in Mexico rather than Utah, despite the existence of some portion of the Defendants' operations in Utah.

The District of Arizona would also not be an appropriate transfer jurisdiction. There is only one case pending in that District, and none of the named Defendants are headquartered there, a factor which admittedly carries less importance due to the fact that the vast majority of discovery will be conducted in electronic form and via remote transfer and communication. In light of the following, the Western District of Missouri remains the most appropriate venue for transfer.

## IV. <u>CONCLUSION</u>

For all the reasons herein, Movants respectfully request the Panel order coordinated and centralized pretrial proceedings for the Actions and transfer all pending and future related

---

[4] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?start_search=1&showList=1&establishmentName=&regNum=36101&StateName=&CountryName=&OwnerOperatorNumber=&OwnerOperatorName=&ProductCode=&DeviceName=&ProprietaryName=&establishmentType=&PAGENUM=10&SortColumn=EstablishmentName20%25ASC&RegistrationNumber=9617592; last accessed June 23, 2023.

actions to the Western District of Missouri before either the Honorable Brian C. Wimes or the Honorable Stephen R. Bough.

Respectfully submitted,

Dated: June 23, 2023

*/s/ Adam M. Evans*
Adam M. Evans
**DICKERSON OXTON, LLC**
1100 Main St., Suite 5550
Kansas City, MO 64105
Telephone: 816-268-1960
Facsimile: 816-268-1965
aevans@dickersonoxton.com
*Counsel for Plaintiffs Jean Cunningham, Vincent Anderson, Patrice Terry*

## **CERTIFICATION OF SERVICE**

This certifies that on the 23rd day of June, 2023, the foregoing was filed with the Panel using the CM/ECF filing system, which sent copies to all attorneys of record.